Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning, may it please the Court. Your Honors, the District Court erred in granting the defendant's 2255 petition and vacating the jury's verdict on count three of the superseding indictment, which charges the defendant with possession of a firearm and furtherance of a carjacking pursuant to 18 United States Code section 924C. In light of the Fourth Circuit's decision in United States v. Harer, this panel, with the exclusion of Judge Gregor, who I know is filling in for Judge Davis, and all the evidence which showed that it was reasonably foreseeable to defendant Franklin that a co-conspirator possessed a firearm prior to the two carjackings, the 2255 petition should have been denied in this case. Are you suggesting that the previous panel's decision operates as the law of the case and has been concluded in the making at that time, the District Court? Your Honor, I was ready for you to ask that question. The government actually, that was the first question that the government posited to the Department of Justice in formulating this appeal, and as the panel is probably aware, the Department of Justice and the Solicitor General's office tailors and trims the issues that can be presented to the Court. So the issues that are presented in our brief are the issues that the Department of Justice and the Solicitor General have said that we can advocate. So you waived that argument? Your Honor, I don't want to say we waived it. I think that would be aggravating. I don't want to say, Your Honor, you're exactly right. You waived it. But if you also, well, Your Honor, perhaps it's waived, but if you actually read between the lines in the briefing, the argument that we're making is that the prior ruling by this Court was well-reasoned and was good enough reason for Judge Garbus in the District Court to have denied the 2255 petition. Personally, as a line prosecutor, yes, I think that the mandate rule or the law of the case doctrine would be an alternative ground, but again, the Department of Justice has limited the issues that I can present to you today in this courtroom. There seems to be an inconsistency here in Judge Garbus saying that the government would retry and then saying in another part of the order that the evidence is insufficient as a matter of law. Could you make sure you make that part of your presentation to address that apparent inconsistency? Sure, Your Honor. That does appear to be an inconsistency because if the evidence was truly insufficient, then I think that would preclude or perhaps preclude us from retrying the case because I think that would end the discussion. But I don't think the evidence is insufficient. As we argued, I think it was about a little over four and a half years ago before this panel began with the exclusion of Judge Gregory, and in fact, Judge Keenan, you specifically addressed in your prior opinion that the evidence overwhelmingly established that Franklin knowingly and actively participated not only in the carjackings, but in the planning of the carjackings, which I think gives rise to the issue here. Where in that statement from the court is the knowledge of the gun? Well, Your Honor, you have to go back and look at... You pointed that statement, but I didn't hear that. Okay, so that's within Judge Keenan's per curiam opinion, but that's part of the factual record. The facts in this case show, Your Honor, that on the day of the carjacking in August of 2010, Defendant Franklin met with Defendant Williams and Frazier to discuss robbing people. And Defendant Williams took the stand and testified against Mr. Franklin and said that part of the plan, and he acknowledged that Franklin was very much involved in the planning, but part of the plan was the use of the firearms. So this is even before they left their residence. The testimony that the jury heard and was free to weigh the credibility of Mr. Williams was that that was part of the plan was to use the firearms. So sure enough, the first carjacking, the three men get into the car... And that's in the record where he said... Yes, it is in the record. ...that they had a weapon. Yes, Mr. Williams acknowledged that he knew before they left the residence that Mr. Frazier had a firearm. Mr. Williams? Mr. Williams said that he was aware that Mr. Frazier had a firearm and that the plan that the three of them concocted was the use of a firearm during the carjackings. So you take it to the next level, Your Honor. During the actual first carjacking, Mr. Frazier brandishes the firearm and that's when Mr. Franklin really kind of takes over inside of the vehicle. The testimony from the victim was that Mr. Franklin did all the talking. And meanwhile, this is a very large firearm that's pointed in the ribcage of this victim. Mr. Franklin reached into the victim's pockets and removed the items from his pocket, including his license. And read his license to the victim. Said, we know your name, we know where you live. And the victim testified during the trial that he perceived as a threat. You argued this before the district court. This was all argued before the district court. And the district court found otherwise. They did find otherwise. Normally, that's when district courts are very, that's why they're in a position to... That was a fact question, isn't it? Your Honor, here's... Is that not a fact question? It is a fact question, Your Honor. And therefore, the district court found as a matter of fact there was not sufficient evidence that he knew there was a gun, correct? I think he found as a matter of law that the evidence was insufficient, Your Honor. Because the facts were established. The facts have changed since the first, since the direct appeal before this court. The district court found as a matter of law that the facts were insufficient. The facts are what they are. So in this case, given what I've given you so far... So what you're saying, I don't mean to cut you off, but what you're saying is the court was sitting on collateral review, but it wasn't engaging in fact finding sufficient evidence as a matter of law. That's correct, and that's... Well, let me ask you something now that you've gotten into the issue as a matter of law. It looks like the district court applied the wrong standard. It applied plain error. That's correct. It was supposed to apply direct, wasn't it? That's correct, Your Honor. Well, why doesn't that just end the case? Why don't we send it back to the district court to apply the direct standard? I suppose you could, Your Honor, but I think... Why wouldn't it? The district court first crafted it applying the direct standard, which is what it should have done in the first place. That's correct, and partially, Your Honor, that's on the fault of counsel. Both parties actually agreed on the wrong standard of review, and it wasn't until we really got into... Correct standard. Correct, Your Honor. It seems more logical to me to give the district court the opportunity to decide it under the proper standard, and then we review what the district court does rather than trying to make sense and put a template over the district court's use to try to figure out whether there's a problem here. Understood, Your Honor, and perhaps that's the solution, is to send it back to the district court so they can make that analysis under the Brecht standard. But again, under the Brecht standard, we still submit that the evidence... Frankly, as we argue in our brief, under both standards, the government's position is that the evidence was sufficient, as developed for the testimony at trial, to support the Pinkerton theory of liability in this case. The Brecht standard is a lower standard for the government. It is a lower standard, Your Honor. Therefore, logically, that wouldn't work. If the court found that under the more difficult standard that we prevail, we certainly would have to send it back, wouldn't we? Well, if you... There's no other way around it. Well, Your Honor, if you would find that we would prevail on the plain errors, if you would agree that Judge Garbus was incorrect, then it would logically follow that on the lower Brecht standard, that we could satisfy that standard as well. If we did that. If you did that. We tried that at the district courts to take the first opportunity to do it under the correct standard. Understood. You wouldn't be opposed to that, would you? Not necessarily. I mean, as a... Well, you're an appellant here, so you can't be choosy again. I would... You wouldn't be... I would... You left a word out of it. Your Honor, I would certainly prefer that you would decide that even under the higher standard that Judge Garbus applied, that he was wrong and that the government was correct, because that would satisfy and pretty much end the issue there. So that would be the government's preference. But I do understand the panel's question. Wanted. Thank you. And if the panel isn't having more questions... Let me ask one other question. To what extent does the Brecht standard overlap the plain error standard? Where's the non-overlap? Well, again, Your Honor, the Brecht standard is a lower standard, and I'm not sure, in terms of the overlap, I think it's... I'm just wondering if you could help us see how much... So the Brecht standard is a substantial and injurious effect standard, and then the plain error standard is, I think, slightly higher. But I'm not sure I can explain if there's an overlap, because I actually think they're coming at it from two different angles, perhaps. At least it doesn't have that Orlando prong, that we have the discretion even in finding all of those, whether or not we're going to recognize the error. It doesn't have that. It does. So I'm not sure I can... You're saying Brecht has that? Oh, no, I'm not saying that. No, I'm not saying that, Your Honor. I'm sorry. No, I'm not saying that. No, it doesn't have it. No, it doesn't have it, because it's a lower, less burdensome standard for the government in a case such as this. And again, that's why our position is that if you look at it from the way Judge Garvis and the district court handled it, that the evidence that the government had met its burden, therefore we logically follow that we could meet the burden under Brecht. That would be, again, our preference, but I understand the court's position as to the Brecht standard as well. I don't have any voice, but let me ask you. If he goes back, has he had control of the issue about Pinkerton versus the hating and abetting? So, under the hate standard, it had to be reversed. Not making it, but they changed it to an enhanced path to what we've been talking about today. Abuse of discretion controls now. So, I'm trying to follow you. So, you're saying if the case goes back, the judge would have to apply the Brecht standard in its analysis, the substantial and injurious effect upon the jury. And in light of that, again, the government could meet its burden showing that there was no substantial and injurious effect based on the Pinkerton theory of liability that was argued during trial and presented to the district court. Throughout trial, Judge Garvis denied a Rule 29 motion. This court affirmed on direct appeal. So, it seems that there's layer upon layer of affirmance of this case until we get to the district court's most recent ruling. So, again, I think no matter what standard you apply, whether it be this plain error or the Brecht standard, I still think the government should prevail in this case. I see no further questions. Thank you, Your Honor. Thank you. Ms. Davis. Good morning, Your Honors. It's our position that under either standard, that Mr. Franklin should prevail. And that's because, first, this court has to recognize that the district court judge made certain specific factual findings, and those are not going to change. And those findings came from, albeit from the trial, the first trial, but those facts, the judge found, were not sufficient to either satisfy the Pinkerton theory of liability. And clearly, That was a question of law the judge was presented. The judge wasn't finding facts. Well, correct, correct. But the facts of the case are what they are. Why did he say, then, that the government could retry on the count? That doesn't make sense to me. It appears inconsistent. It does appear inconsistent, and I think maybe what Judge Garbus was trying to do was saying because Rosamond was not in effect at the time of the trial, then perhaps the government would want to retry that. But I think it is inconsistent, and I think given the finding of insufficiency of evidence, that the government could not retry on count three. You're saying we don't have to worry about that. That's an issue for another day. Exactly, exactly, yes. Okay. If there's no other questions regarding this issue, I'd like to move on to the double jeopardy in regards to the resentencing. In this case, this court has to determine whether Mr. Franklin had a legitimate expectation of finality as to the severity of the sentence. At the time of filing this 2255, he had already served the sentence on counts one, two, four, and six, and that was a 30-month sentence. Therefore, this court has to decide, is this case more like Silver's, or is it more like Smith and Hillary? We submit it's more like Silver's because there were specific terms of imprisonment set forth at the time of the sentencing. Moreover, this case is distinguishable from Hillary and Smith because in Hillary, the defendant had not yet served a 78-month sentence after the 924C had been set aside. In fact, this court specifically expressed no opinion whether double jeopardy would bar resentencing after the 78 months had passed. So this case is, in some sense, Hillary actually helped Mr. Franklin because Mr. Franklin had already served the 30-month sentence. In regard to Smith, in that case, the government made a specific request of a sentence of, I forget what it was, I think 87 months, 97 months. And in that case, the judge tried to tailor the sentence to fit the requested sentence of the government based on the defendant's cooperation. In this case, the government did make a request, made a request for 444 months incarceration. However, the judge rejected that. And he did not, the judge did not say, okay, I'm, what the judge went forward and did, he gave specific sentences yet again on the specific counts. And although the judge said at the end for a total term of imprisonment of such and such months, this court cannot ignore the fact that there were specific terms for each count. How does our case in United States v. Ventura and more generally the Sentencing Packaging Doctrine impact your analysis of this issue? Well, I think that if this court, I think what will happen in this case, if this court says that it was a Sentencing Packaging Theory, that in the end, that means, Silvers means nothing. And that this court would have to basically in effect overrule Silvers because there has to be a dividing point where this court is going to say, okay, we've got specific terms of imprisonment for each count or we have a total term of imprisonment. The judge wasn't clear in this case what he meant. I think he acknowledged as much. And so if this court looks at everything as being a Packaging Theory, whenever you have a series of counts, well then, in the end, that swallows up Silvers and Silvers means nothing. And are there any other questions? No, no, I understand. I mean, essentially you're saying the defendant had an expectation that he would serve these 30 months concurrent. Exactly. And that to upend that at this point would violate his... Exactly, exactly, Judge. ...right against Joppa Jeopardy. Okay. Okay, thank you. Briefly, Your Honors. The government believes that the Silvers case, in terms of this Sentencing Package Doctrine, is factually distinguishable. Silvers involved a multi-count indictment, similar to what we have here, except that the major exception is the Silvers case, there was no mandatory minimum sentences. In Franklin, the case before the court, as well as Hillary, Smith, Ventura, all of those cases that discuss the Sentencing Package Doctrine all involve some sort of consecutive mandatory minimum sentences. As I'm sure you're aware, this court has made it clear that when you're dealing with mandatory minimum sentences, consecutive sentences, if you will, that you look at the sentence in the aggregate. So to accept Mr. Franklin's argument that somehow he had this expectation of 30 months, that's contrary to what this court has ruled. In Silvers, the government conceded the need for resentencing. Did it not? I believe they did, Your Honor. How does that affect how we look at all this? So I think I always kind of looked at the Silvers case with an asterisk, because if you look at the line of cases issued from this court, Hillary, Smith, Ventura, they're all in line with each other. So I do think the Silvers case and the fact that the government ceded and acknowledged that there had to be resentencing, I do think that that plays in differently, because if you read Silvers in conjunction, so I wrote them all sitting down at my desk on the same day at the same time. Silvers just seems to be an outlier, and I think you hit the point, Your Honor, that it seems to be an outlier because the government made that concession in that case. So we don't have that here with Franklin. That wasn't the case presented with Hillary, Smith, or Ventura. And in those cases, the correct law is applied as the Sentencing Package Doctrine. And the concept that, particularly when you're dealing with consecutive sentences, mandatory minimums or whatever, consecutive sentences, how you want to label them, that you look at the sentence in the aggregate. And that's really what Judge Garbus did here in both sentences.  In the most recent sentence, it was a 236-month sentence. The sentence was presented in the judgment and commitment form as an aggregate sentence. Yes, you can parse down and look at the individual sentences, but in the end, it is an aggregate sentence in accordance with the law. So the government submits that the Sentencing Package Doctrine does apply and that Judge Garbus, in the resentencing, used the correct law in that he applied the Sentencing Package Doctrine. Of course, we disagree and say that he was wrong because he shouldn't have set aside count three so that his sentence the second time around was actually incorrect. He should have kept count three intact and essentially issued the same sentence as previous. I think back in 2013, I think, is when the defendant was sentenced. There's quite a disparity in the sentencing in this case. You mean from the first sentence? Well, that had to do because of the 924C count, Your Honor. But still, count or not, the person with the gun is undisputed. How much time did they get? The defendant, Frazier, who pled, he got between 10 and 15 years, Your Honor. And how much did Mr. Franklin get? Franklin initially was sentenced to 32 years. Thirty-two years, three times as much as the person who had the gun. That's correct, Your Honor. But you know a lot… Why do you say that as so matter-of-fact like this, right? Does that strike you as sort of strange? It doesn't, Your Honor, because… Tell me why not. As a line prosecutor, there's a lot that plays into how a defendant is sentenced. Criminal record, which is really what, as you know, pre-sentence reports are prepared ahead of sentencing, which outline a criminal record, which affect their offense levels and their criminal history levels. So you can have two defendants who commit the same crime but look at very different sentences based on their background and their criminal record. So it doesn't, I don't want to come off as… What's the difference? He didn't plead guilty. Franklin did not plead guilty. Oh, so he didn't plead guilty. He chose to exercise his rights under the Constitution. That's correct. I didn't finish the question yet. He pled not guilty and chose to exercise his rights under the Constitution because he had a right to do so. He was sentenced to three times as much as the person who chose to plead guilty. That's correct. Go ahead. I think it's fair. I think the court should know that the exact same plea agreement was issued to all three defendants in this case. That's what I'm saying. So that's even worse. You bring it in. So that's clear now. Thank you very much, Counsel. So you're punished but not… because you exercised your constitutional right to go to trial and have a jury decide your case? Unfortunately, Your Honor, Congress has set up the 924C statutes in that fashion and agree with that, agree with the stacking of the 924Cs or disagree that it's a matter of law. It's a statutory provision. And the defendant was aware of that prior to going to trial. We sat down with him. His counsel sat down with him. This was all on the record. And he's still elected to go to trial. So it's not a trial penalty as much as he was aware of what he was facing when he was going into that courtroom. And again, this case is not about the sentence, Your Honor. It's not about the sentence. This is about what Judge Garvis and the district court did legally in terms of construing the facts to the correct standard or incorrect standard of law in this case. The sentence didn't play a role or a factor in why we're here today or the case that we presented to the court today. But I note the court's inquiry. If there's no further questions. All right, thank you. Thank you, counsel. We note, Ms. Davis, that you were caught upon. I just want to thank you on behalf of the Fourth Circuit for assisting the court. Lawyers like yourselves who take on those assignments do a great service to the court. We appreciate that. Mr. Siblin, as well, thank you for your able representation of the United States. Thank you. We'll come to our brief counsel and proceed to our next case.
judges: Roger L. Gregory, Barbara Milano Keenan, Henry F. Floyd